**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS** | ) | |
| **TRUSTEE FOR THE BENEFIT OF THE** | ) | |
| **HOLDERS OF COMM 2013-CCRE12** | ) | Civil Action No.:    1:17-CV-138 (Keeley) |
| **MORTGAGE TRUST COMMERCIAL** | ) | |
| **MORTGAGE PASS-THROUGH** | ) | |
| **CERTIFICATES** | ) | |
| c/o LNR Partners, LLC | ) | |
| 1601 Washington Avenue | ) | |
| Miami Beach, FL 33139 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MOUNTAIN BLUE HOTEL GROUP, LLC** | ) | |
| 205 Marion Square Plaza | ) | |
| Fairmont, West Virginia 26554 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ELECTRONICALLY
FILED
Aug 08 2017
U.S. DISTRICT COURT
Northern District of WV

**COMPLAINT**

Plaintiff U.S. Bank National Association, as Trustee for the benefit of the Holders of

COMM 2013-CCRE12 Mortgage Trust Commercial Mortgage Pass-Through Certificates

("Lender" or "Plaintiff"), by and through its undersigned counsel, files this complaint against the

above-captioned defendant ("Defendant" or "Borrower"), and for its complaint, respectfully

alleges as follows:

**INTRODUCTION**

1.      This is a commercial breach of contract action relating to Lender's loan to

Borrower, which is secured by a Hilton Garden Inn located in the Sun Crest Town Center, 201

Memorial Highway, Morgantown, West Virginia 26505.  Lender filed this action because events

of default have occurred under the Loan Documents (defined below) and the property value is at

risk.  Lender seeks to exercise its contractual and legal remedies in order to preserve and protect

its security interest in the property.  To that end, Plaintiff will contemporaneously be filing an emergency motion for the appointment of a receiver to operate and manage the property while the default is ongoing and prior to a trustee's sale of the property.

**PARTIES, JURISDICTION AND VENUE**

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

3.      Plaintiff is U.S. Bank National Association, as trustee for the benefit of COMM 2013-CCRE12 Mortgage Trust Commercial Mortgage Pass-Through Certificates.  U.S. Bank National Association designates Cincinnati, Ohio at its main office in its Amended and Restated Articles of Association.

4.      Plaintiff is a "real estate mortgage investment conduit" (REMIC) trust created under the Internal Revenue Code, 26 U.S.C. §860D.  For purposes of diversity of citizenship, a trust is the citizen in which its trustee is a citizen.  *Navarro Savings Assoc. v. Lee*, 466 U.S. 458, 464 (1980).  A national banking association is a citizen of "the State in which its main office, as set forth in its articles of association, is located."  *Wachovia Bank, Nat'l Ass'n v. Schmidt, III*, 546 U.S. 303, 307 (2006); *accord, White v. Wells Fargo Bank*, 2014 WL 3882181, p. 14 (SD W.Va.) ["a national bank is a citizen only of the state in which its main office is located"], and see 28 U.S.C. §1348.  Therefore, Plaintiff is a citizen of the state of Ohio.

5.      Defendant is a Georgia limited liability company having an address of 205 Marion Square Plaza, Fairmont, West Virginia 26554.  For purposes of diversity of citizenship, a limited liability company is treated the same as a partnership and therefore, courts look to the citizenship of each member of the limited liability company.  *General Technology Applications Inc. v. Exro Ltda*, 388 F.3d 114, 119-120 (4th Cir. 2010). Upon information and belief,

2

Borrower's members are William A. Abruzzino, Rebecca A. Abruzzino, Martha Hughes, Martha Hughes, as Trustee of the William A. Abruzzino and Rebecca A. Abruzzino Generation Skipping Trust, Judy Nunnally, Jaron Smalley, AA Property, LLC, Peachtree Village Partners, LLC, Rebecca A. Abruzzino, as trustee of the Robert A. Abruzzino Irrevocable Trust, and Mark A. Abruzzino.  As set forth below, on information and belief, none of Borrower's members are citizens of the same state as Plaintiff (Ohio) for diversity purposes.

6.     Upon information and belief, William A. Abruzzino and Rebecca A. Abruzzino are domiciled in Florida and thus are not citizens of the same state as Plaintiff (Ohio) for purposes of diversity jurisdiction, either in their individual capacity or in Rebecca A. Abruzzino's capacity as trustee.

7.     Upon information and belief, Martha Hughes is domiciled in the state of Georgia, and therefore Martha Hughes, in her individual capacity and as trustee, is not a citizen of Ohio for purposes of diversity jurisdiction.

8.     Upon information and belief, Judy Nunnally is domiciled in the state of Florida, and therefore is not a citizen of Ohio for purposes of diversity jurisdiction.

9.     Upon information and belief, Jaron Smalley is domiciled in the state of Georgia or West Virginia, and therefore is not a citizen of Ohio for purposes of diversity jurisdiction.

10.     Upon information and belief, AA Property, LLC is a West Virginia limited liability company whose members are Larry Puccio and Joe Manchin III.  Upon information and belief, Larry Puccio and Joe Manchin III are each domiciled in West Virginia, and therefore are not citizens of Ohio for purposes of diversity jurisdiction.

11.     Upon information and belief, Peachtree Village Partners, LLC is a Georgia limited liability company whose members are George H. Freisem and Allen C. Freisem.  Upon

information and belief, George H. Freisem and Allen C. Freisem are each domiciled in Georgia, and therefore are not citizens of Ohio for purposes of diversity jurisdiction.

12.    Upon information and belief, Mark A. Abruzzino is deceased, but was formerly domiciled in the state of Florida, and therefore is not a citizen of Ohio for purposes of diversity jurisdiction.

13.    Thus, at the time of filing this action there is complete diversity of citizenship between Plaintiff and Defendant.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the subject matter of this complaint is situated in this District.[1]

## BACKGROUND

### Borrower's $15,470,000.00 Loan Secured by
### the Hilton Garden Inn, Sun Crest Town Center, Morgantown

15.    On or about September 17, 2013, UBS Real Estate Securities, Inc. ("Original Lender") made a loan to Borrower in the amount of $15,470,000.00 (the "Loan").

16.    The terms and conditions of the Loan are governed by a Loan Agreement dated September 7, 2013 executed by Original Lender and Borrower.  A true and correct copy of the Loan Agreement is attached as **Exhibit A**.

17.    The Loan is evidenced by that certain Promissory Note dated September 17, 2013 in the original principal amount of $15,470,000.00 in favor of Original Lender (the "Note").  A true and correct copy of the Note, including allonges thereto, is attached hereto as **Exhibit B**.

18.    Borrower's obligations under the Note are secured by that certain Deed of Trust and Security Agreement dated as of September 11, 2013, effective as of September 17, 2013 ("Deed of Trust") executed by Borrower in favor of David E. Thompson ("Trustee") for the

---

[1] See 28 U.S.C. §102.

benefit of Original Lender covering real and personal property commonly known as "Hilton Garden Inn Morgantown" located at 201 Memorial Highway at Sun Crest Town Center, Morgantown, West Virginia (the "Property"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C**.

19.    The Deed of Trust was recorded in the real estate records for Monongalia County, West Virginia (the "Records") on September 18, 2013 as Instrument Number 518468 in Volume 1967, Page 304.

20.    As further security for the Loan, Borrower executed that certain Assignment of Leases and Rents ("ALR") dated as of September 17, 2013 which was duly recorded in the Records on September 18, 2013 as Instrument Number 518469 in Volume 120, Page 130. A true and correct copy of the ALR is attached hereto as **Exhibit D**.

21.    Borrower operates the Property as a "Hilton Garden Inn" pursuant to a Franchise License Agreement dated May 20, 2008 ("Franchise Agreement") with Hilton Garden Inns Franchise LLC ("Hilton"). A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit E**.

22.    In connection with the Loan, Hilton and the Original Lender executed a Comfort Letter dated September 17, 2013 pursuant to which Hilton acknowledged that the Original Lender and its successors and assigns may, in certain circumstances, perform under the Franchise Agreement. A true and correct copy of the Comfort Letter is attached hereto as **Exhibit F.**

23.    Original Lender assigned the Note, the Deed of Trust, and the ALR to the Plaintiff, as evidenced by (i) an Allonge; (ii) an Assignment of Deed of Trust and Security Agreement; and (iii) an Assignment of Assignment of Leases and Rents. The assignments of the

Deed of Trust and ALR were duly recorded in the Records. Copies of the assignments of the Deed of Trust and ALR are attached hereto collectively as **Exhibit G**. A copy of the Note allonge to Plaintiff is attached with the Note as Exhibit B.

24.    The Note, Loan Agreement, Deed of Trust, and assignments, together with certain other documents evidencing, governing or securing the Loan, shall be referred to collectively as the "Loan Documents."

25.    Upon an Event of Default (as defined in the Loan Agreement), under the Loan Documents, Lender is entitled to, among other things, sell the property by power of sale, pursue a judgment on the Note to enforce rights under the Deed of Trust, and apply for the appointment of a receiver to manage the Property. (Ex. C, § 7.1(d), (f), (g)).

**Borrower's Events of Default Under the Loan Documents**

Borrower Failed to Pay Franchise Fees.

26.    Borrower failed to remit royalties to Hilton under the Franchise Agreement in the amount of $235,671.23, which triggered defaults under the Franchise Agreement and nearly cost Borrower the use of the valuable Hilton flag. Borrower's failure to make franchise payments was a default under the Franchise Agreement.

27.    By letter dated on or about April 18, 2017 ("Franchise Termination Notice"), Hilton notified Borrower that the Franchise Agreement would terminate on May 11, 2017. A true and correct copy of the Franchise Termination Notice is attached hereto as **Exhibit H**. Upon termination, Borrower would be required to cease all operations under the Hilton name.

28.    The right to operate under the Hilton name is essential to preserve the value of the Property. The loss of the Hilton flag would cause irreparable harm to the value of the Property.

29.    To protect the franchise flag, Lender advanced $235,671.23 to pay Hilton the arrears due under the Franchise Agreement.

30.     As it is entitled to do under the Loan Documents, Lender demanded repayment of the advanced amount from Borrower by letters dated May 8, 2017 and May 19, 2017.  True and correct copies of the demand letters are attached hereto as **Exhibit I**.  To date, the Borrower has not paid Lender those amounts.

31.     Borrower's default under the Franchise Agreement is an Event of Default under Section 10.1(a)(x)(i)(x) of the Loan Agreement.

Borrower Failed to Pay Taxes.

32.     Between June of 2015 and May of 2017, the State of West Virginia filed tax liens against the Property totaling $437,878.42 ("State Tax Liens").  True and correct copies of the filed Notices of the State Tax Liens are attached here as **Exhibit J**.

33.     In April of 2017, the Monongalia County Commission filed suit against Borrower for its failure to pay hotel taxes (the "Tax Complaint"). A true and correct copy of the Tax Complaint is attached hereto as **Exhibit K**.

34.     According to the Tax Complaint, Borrower entered into a repayment plan with the City, but did not comply with that agreement.  At the time of the agreement, delinquent taxes totaling almost $150,000 had accrued.  Ex. K.

35.     The County has requested that, among other things, the imposition of liens on the Property and that the sale of the Property to satisfy the unpaid taxes.  Such tax liens prime the Plaintiff's liens in the Property.

36.     Borrower's failure to pay taxes is an Event of Default under Section 10.1(a)(ii) the Loan Agreement.  Allowing the Property to be encumbered by liens is also an Event of Default under Section 10.1(a)(iv) of the Loan Agreement.

Borrower Cannot Pay Debts and Expenses Related to the Property.

37.    The Loan Documents require Borrower to submit a budget to Lender containing projected revenues and expenses prior to each calendar year.  Borrower's budget figures for 2016 and 2017 (the "Budget") are attached as **Exhibit L**.  Despite being required to provide financial information under the Loan Documents and repeated demands by Lender, Borrower has not provided Lender with year-to-date actual expenses and payables.

38.    Borrower's own financial projections confirm that the Borrower does not have sufficient cash flows to cover all operating revenues.

39.    In 2017, Borrower projected a cash shortfall of $158,362.32.  (Ex. L, Total Net Cash Flow After Debt Service).

40.    Under the Loan Documents, all rents and revenues of the Property are to be deposited by Borrower and its property manager into a cash management account controlled by the Lender (the "Control Account").  So long as an Event of Default has not occurred under the Loan Documents, after applying revenues deposited in the Control Account to the monthly principal, interest, and reserve amounts due under the Loan Documents, Lender then releases the remaining funds to Borrower. However, following an Event of Default, Borrower is not entitled to any funds in the Control Account since its license to use the Property's rents is automatically revoked following an Event of Default.

41.    Demonstrative of the Property's revenue shortfalls, on May 24, 2017, Borrower made an emergency request that Lender advance the balance of the Control Account to Borrower.  Borrower represented to Lender that, without the immediate infusion of funds from Lender, Borrower could not cover basic operating expenses including payroll and utilities.  A copy of Borrower's counsel's request is attached hereto as **Exhibit M**.

42.     On May 25, 2017, although not required to in light of Borrower's continuing Events of Default, Lender released the remaining balance in the Control Account ($187,211.91) to Borrower with the understanding that the amounts would be used for payroll and other Property operating expenses.

43.     Although not required to following an Event of Default, Lender released $180,000 from the Control Account to Borrower in July 2017 for operating expenses and has recently received another request from Borrower's counsel to pay Borrower's payroll expenses.

44.     Lender is not certain if the Property's rents are being used to pay expenses of the Property.  For example, franchise fees and taxes were included in the Budget and were clearly not paid.  Absent the appointment of a receiver, there is no assurance that the Property's rents or any Lender advances will be properly applied to expenses of the Property.

45.     Despite Lender's repeated requests, Borrower has not provided to Lender actual financial statements or information regarding actual income and expenses of the Property or what it has done with recent advances from Plaintiff, as required by the Loan Documents.

46.     Borrower's inability to pay expenses as they come due is an Event of Default under Section 10.1(a)(vii) the Loan Agreement.

47.     Additional events of default may have occurred and Lender reserves all rights with respect to those defaults.

Acceleration of the Loan.

48.     As a result of the foregoing Events of Default, the balance of the Loan was accelerated pursuant to the terms and conditions of the Loan Documents.  By letter dated June 14, 2017, Lender notified Borrower of the acceleration of the Loan and demanded payment in full.  To date, the Loan has not been repaid.  A copy of Lender's acceleration notice is attached as **Exhibit N**.

49.     As of June 12, 2017, the principal balance due and owing under the Loan Documents is $14,559,226.84.

50.     Interest is accruing on the Loan at the default rate set forth in the Loan Documents.

51.     As of the date hereof, the balance of the Loan remains unpaid and all Events of Default remain uncured.

FIRST CAUSE OF ACTION:  MONEY JUDGMENT

52.     Plaintiff repeats and realleges all prior allegations.

53.     The Loan Documents are valid and enforceable.

54.     Defendant is in breach of the Loan Documents.

55.     The balance under the Loan Documents has been demanded and accelerated.

56.     Plaintiff is entitled to a money judgment against the Defendant in the amount due and owing under the Note, including principal in the amount of $14,559,226.84, together with interest at the default rate, costs, fees, legal fees, expenses and other amounts recoverable under the Loan Documents.

SECOND CAUSE OF ACTION:  SPECIFIC PERFORMANCE

57.     Plaintiff repeats and realleges all prior allegations.

58.     The Loan Documents are valid and enforceable.

59.     As set forth above, Defendant is in breach under the Loan Documents.

60.     Under Section 7(g) of the Deeds of Trust, Plaintiff is entitled to the appointment of a receiver after an Event of Default.

61.     Under Section 7(e) of the Deed of Trust, Plaintiff is entitled to specific performance of any covenant, condition or agreement contained in the Loan Documents.

10

62.     Recent events at the Property have raised numerous red flags that the value of the

Property is at risk.

(a)     Borrower failed to pay franchise fees to Hilton of $235,671.23 which put the valuable Hilton flag at risk of being terminated.

(b)     Borrower failed to pay West Virginia State taxes, resulting in tax liens against the Property totaling $437,878.42.

(c)     Borrower failed to pay hotel taxes of approximately $150,000.00 which has led to a lawsuit by the County seeking the imposition of liens and sale of the Property.

(d)     Based on Borrower's own projections, Borrower does not have sufficient net cash flows to cover prior losses or expenses going forward.

(e)     Borrower almost failed to fund its payroll for the last week of May of 2017 and had to obtain an advance from Lender to cover the expenses.

(f)     Lender anticipates an imminent request from Borrower to make further loan advances to cover operating expenses going forward.

(g)     Borrower continues to hide its true financial condition from Lender by refusing to provide actual financial data for 2017 and possible other periods.

63.     Plaintiff expects that it will be asked to pay additional amounts to protect the

Property in the immediate future.  Plaintiff will not agree to additional advances absent the

appointment of a receiver that will ensure the Property is properly managed and expenses are

actually paid.

64.     A receiver is needed to ensure that the Property is properly maintained and that all

revenues (and any advances the Lender may provide in its discretion) are properly applied to

expenses.

65.     The appointment of a receiver will not only directly benefit the Plaintiff, but will

also benefit other potential constituents, including Hilton, the applicable taxing bodies, vendors,

and hotel employees.

66.     Defendant will not be harmed by the appointment of a receiver because it contractually agreed to the appointment of the receiver in the Loan Documents.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.     Upon the First Cause of Action, a money judgment in the amount due and owing under the Loan, including principal in the amount of $14,559,226.84, interest at the default rate under the loan documents, late charges, fees, costs, attorneys' fees, and other amounts as may be recovered under the Loan Documents, less any reserves on deposit with Lender and any unapplied funds in Lender's possession to the extent such amounts must be credited to the Loan, plus interest at the default rate after the date of judgment.

B.     Upon the Second Cause of Action, the appointment of a receiver over the Property and all rents related thereto.

C.     Other and further appropriate relief.

Dated:  August 8, 2017

Respectfully submitted,

/s/ *Christopher P. Schueller*

Christopher P. Schueller
West Virginia State Bar Number 11267
Timothy P. Palmer
West Virginia State Bar Number 11275
Attorney for Plaintiff
BUCHANAN INGERSOLL & ROONEY LLP
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone:  (412) 562-8432
Fax:  (412) 562-1041
christopher.schueller@bipc.com
timothy.palmer@bipc.com

4841-4573-2681, v. 11